IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| ALFRED M. ANDRADE, III | ) | |
| | ) | Case No: 2:11-CV-140 |
| v. | ) | MATTICE/CARTER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the final decision of the Commissioner denying the plaintiff a period of

disability, disability insurance benefits, and supplemental security income under Title II and Title

XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.    This matter was referred

to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil

Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion

for Judgment on the Pleadings (Doc. 11) and defendant's Motion for Summary Judgment (Doc.

13).

For reasons that follow, I RECOMMEND the decision of the Commissioner be

AFFIRMED

## Plaintiff's Age, Education, and Past Work Experience

Plaintiff, born in 1961, was 48 years old at the time of the ALJ's decision (Tr. 16-17, 26).

Plaintiff completed the 11th grade, earned a general education diploma, and has past work

experience as a baker, forklift operator and shuttle-van driver (Tr. 26, 41, 153).

1

## Applications for Benefits

Plaintiff protectively applied for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI) on July 10, 2008, alleging he became disabled on October 11, 2006 (Tr. 53, 110-11, 117-24).   After his applications were denied at the initial and reconsideration levels (Tr. 57-72), Plaintiff requested a hearing before an administrative law judge (ALJ) (Tr. 73-74).   Following a hearing on April 12, 2010 (Tr. 22-44), the ALJ's April 26, 2010 decision found Plaintiff not disabled from October 11, 2006, through April 26, 2010 (Tr. 8-17).[1] The Appeals Council denied Plaintiff's request for review, finding no basis under its rules to review the ALJ's decision (Tr. 1-4).   The Commissioner's final decision is ripe for review under 42 U.S.C. § 405(g).

## Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. §423(d)(1)(A).   The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).   Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work

---

[1]   During the hearing, Plaintiff amended his alleged disability onset date to March 1, 2008 (Tr. 24-25).   However, the ALJ's decision covers the period from Plaintiff's original alleged disability onset date through the date of the decision (Tr. 16, Finding No. 10).

2

experience.  *Richardson v. Secretary, Health and Human Servs*., 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs*., 803 F.2d 211, 213 (6th Cir. 1986).  Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed.  *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).  The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion.  The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted). The substantial evidence standard allows considerable latitude to administrative decision makers.  It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts.  *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs*., 790 F.2d 450 n. 4 (6th Cir. 1986).

After consideration of the entire record, the ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.   The claimant has not engaged in substantial gainful activity since October 11, 2006, the alleged onset date (20 CFR 404.1571*et seq*, and 416.971 *et seq*.).

3

3.   The claimant has the following severe impairments: cardiac, diabetes, back pain, obesity, and depression (20 CFR 404.1520(c) and 416.920(c)).

4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

5.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

6.   The claimant was born on xxxx, xx, 1961 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

7.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

8.   The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).

9.   Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d)).

10.   The claimant has not been under a disability, as defined in the Social Security Act, from October 11, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 10-16).

## Issues Presented

Plaintiff raises the following issue: Whether the Commissioner's decision that Plaintiff was not under a disability is supported by substantial evidence.

## Relevant Facts

**A.   Medical Evidence**

The Plaintiff was in the custody of the Arkansas Department of Corrections for a number of years for failure to pay child support (Tr. 514).   In October 2006, the claimant was restricted

4

from strenuous physical activity and heavy lifting in excess of 19 pounds. Physical restriction was noted to be moderate physical stamina but the duration of the condition was assessed as temporary (Tr. 192). In December 2006, it was noted that Plaintiff had a slight spasm in his back (Tr. 212). In December 2006, his clinical history was shortness of breath and the impression was: low lung volumes, otherwise unremarkable examination (Tr. 366).

In March 2008, he was diagnosed as suffering from depressive disorder, NOS, poly-substance dependence, and rule out anti-social personality disorder (Tr. 425). In February 2008 Plaintiff was evaluated by a psychiatrist with the Arkansas Department of Corrections, Dr. Albert L. Kittrell. He noted that the Plaintiff's mood was both depressed and anxious and he diagnosed a possible depressive disorder NOS, a history of poly-substance dependence, congestive heart failure, coronary artery disease, restless leg syndrome by history, and history of muscle spasms. Dr. Kittrell reported Plaintiff to be cooperative and noted at no point did he appear to be nervous or jittery. Plaintiff was completely rational during conversation. Although he reported depressed mood and anxiety, his affect was appropriate and actually quite bright. He was alert and oriented. Dr. Kittrell did not discern clear symptoms of depression or anxiety although subjective complaints were made (Tr. 515).

The Plaintiff was evaluated in a consultative examination by Ms. Alice K. Garland, a psychologist, on March 18, 2009. Ms. Garland diagnosed depressive disorder, NOS, rule out bipolar disorder, rule out intermittent explosive disorder, alcohol and poly-substance abuse in full sustained remission, and rule out personality disorder, NOS. Plaintiff reported a history of intermittent depression for 15 years and that for the past three years his family physician had prescribed him an antidepressant (Tr. 517). He described his daily activities as arising at 5:30 a.m. to prepare breakfast for his wife and get his daughter off to school; going back to bed until

5

noon; getting up to clean the house, washing dishes and doing laundry; and then preparing supper

for his wife (Tr. 518).   Plaintiff also stated he and his wife started a church in their home and

members meet there twice a week for worship (Tr. 518). On examination, Ms. Garland noted

Plaintiff's dress, grooming and hygiene were adequate.   He was pleasant and cooperative (Tr.

516).   Plaintiff's motor activity was average.   He had good eye contact (Tr. 12, 516).   His

thought process was organized and there was no indication of a thought disorder (Tr. 12, 516).

Plaintiff's insight and judgment were fair to poor and his affect and mood were congruent and

appropriate (Tr. 516).   Ms. Garland estimated Plaintiff's current ability to relate to others was

adequate to fair (Tr. 12, 518).   Ms. Garland's diagnostic impression was a Depressive Disorder,

NOS" (Tr. 12, 519).   In assessing Plaintiff's functional capacities, Ms. Garland opined Plaintiff

had no more than a mild limitation in his ability to do complex and detailed work; his ability to

persist and concentrate was moderately limited; his ability to work with the public was moderately

limited; he may not take authority well; he may feel more comfortable working by himself or in

small groups; and his adaptation was moderately limited (Tr. 12, 519).

   Dr. Purswani evaluated Plaintiff in March 2009 (Tr. 11-12, 520-24).   On examination,

Plaintiff's speech, hearing, gait and station were normal (Tr. 522).   Plaintiff used no assistive

devices and was able to get on and off the examination table without help (Tr. 11, 522).

Plaintiff's shoulders, elbows, wrists and hands as well as his hips, knees and ankles were

non-tender and had normal range of motion (Tr. 11, 522).   Likewise, Plaintiff's back was

non-tender and had normal range of motion (Tr. 11, 523).   Neurologically, Plaintiff had full

strength in both his upper and lower extremities, he had no tremors, his toe and heel strength were

normal and he was able to stand on each foot, but was unable to tandem walk (Tr. 11, 523).

Dr. Purswani ordered and obtained chest x-rays of Plaintiff's chest and images of Plaintiff's spine

(Tr. 525-26). Chest x-rays revealed Plaintiff had a normal chest without pulmonary infiltrate or effusion (Tr. 11, 525). Plaintiff's lumbar imaging revealed Plaintiff had marginal osteophytes in his upper lumbar spine with no significant disc space narrowing or fracture (Tr. 11-12, 526). Dr. Purswani opined Plaintiff could frequently lift 10 pounds; stand and walk with breaks for a total of 7 hours in an 8-hour workday; and sit for a total of 8 hours in an 8-hour workday (Tr. 12, 524).

A state agency reviewing psychologist, Dr. Mason D. Currey, Ph.D., recorded the following summary conclusions in his report: Plaintiff would be moderately limited in his ability to maintain attention and concentration for extended periods and to work in coordination or proximity to others without being distracted by them (Tr. 527), to complete a normal work day and work week without interruptions from psychologically based symptoms, to interact appropriately with the public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers and respond appropriately to changes in the work setting. Plaintiff was not significantly limited in 13 other areas (Tr. 527, 528).

In his Functional Capacity Assessment, Dr. Currey opined Plaintiff could carry out simple and complex instructions, would have some but not substantial difficulty in maintaining attention and concentration for extended periods or working in coordination with proximity to others and interacting with the general public, co-workers and supervisors and could adapt to infrequent change (Tr. 529).

In a Psychiatric Review Technique, Dr. Currey opined Plaintiff was moderately limited in his ability to maintain social functioning or concentration, persistence or pace, mildly limited as to activities of daily living with no episodes of decompensation of extended duration. He found the evidence did not establish the presence of the "C" criteria (Tr. 616, 617). He concluded Plaintiff showed no more than moderate impairment in functional abilities due to mental health problems

(Tr. 618).

Plaintiff was also under the care of the Bulls Gap Medical Center.   In a May 16, 2007 note it appears congestive heart failure was reported to have been diagnosed "12 to 18 months ago," however there appear to have been no findings on examination.   Nevertheless, it was part of the assessment, along with fine tremors of both upper extremities (Tr. 535).   Other medical records include 7 separate evaluations from the Bulls Gap Medical Center from November, 2003 to January 2007.   All of them reflect normal cardiac function (Tr. 554, 552, 550, 548, 546, 544, 542, 540 and 538).   On February 20, 2009, Plaintiff had hypertension and joint/muscle pain along with anxiety and depression and fatigue but examination showed regular rate and rhythm, no murmurs, rubs or gallops and normal $S_1S_2$. (Tr. 533).

On April 27, 2009, a state agency reviewing physician, Joe G. Allison, M.D., opined that Plaintiff was limited to occasionally lifting 20 pounds, could frequently lift 10 pounds, could sit, stand, or walk for six hours in a work day (Tr. 596), could never balance and could only occasionally climb, stoop, kneel, crouch or crawl (Tr. 597) and had to avoid concentrated exposure to extreme heat or cold or hazards (Tr. 599).   He opined that Dr. Purswani's restrictions were too restrictive (Tr. 601) and noted that the Plaintiff's statements were partially supported by the medical evidence in that the Plaintiff had a history of congestive heart failure, heart attacks, hypertension, diabetes, and chronic back and knee pain, but noted there was no medical evidence of record to support the history of heart attacks.   He considered Plaintiff's complaint of shortness of breath with exertions and Plaintiff's obesity and pain in reducing his residual functional capacity (Tr. 602). On June 22, 2009 another State Agency Physician, Saul A. Juliao reviewed the April 27, 2009 physical assessment and concluded it should be affirmed as written ( Tr. 605).

The Plaintiff had been hospitalized in Tacoma Adventist Hospital March 25, 2003.   He

8

reported exertional anterior chest tightness over the past month or so and one week prior, a sustained episode of at least twenty minutes with some sweating and slight shortness of breath. He was diagnosed with unstable angina with possible small acute coronary event one week prior with now resting angina and a history of exertional angina and multiple positive risk factors (Tr. 633).

The Plaintiff was also hospitalized in Johnson City Medical Center in June 2003. He was diagnosed as suffering from hypertension, dyslipidemia, cigarette smoking and obesity (Tr. 639). A cardiac catherization report of March 27, 2003 assessed non-cardiac chest pain and normal ejection fraction (Tr. 642, 643).

The Plaintiff was hospitalized in Morristown-Hamblen Hospital on January 25, 2010. His admission diagnoses was acute respiratory failure, acute exacerbation of congestive heart failure, possible pneumonia and chest pain, rule out acute coronary syndrome (Tr. 666). On physical examination he was well developed, well-nourished and in no acute distress. He was awake, alert and oriented. His cardiac evaluation showed regular rate and rhythm with no murmurs, rubs, or gallops. He was positive for diffuse, coarse rhonchi and bibasilar fine rales with overall limited air movement and some end expiratory wheezing as well (Tr. 667). Chest x-rays showed borderline cardiomegaly with interval development of what appeared to be mild bilateral vascular congestive changes. The provisional diagnosis was acute respiratory failure, acute exacerbation of congestive heart failure, possible pneumonia and chest pain; rule out acute coronary syndrome (Tr. 668).

The Plaintiff continued to be cared for by the Bulls Gap Medical Clinic. In November 2009, it was noted that he had back pain and he was trying to get disability (Tr. 675). In January 2010, Plaintiff reported shortness of breath but denied chest pain. He had been sick for three days

9

with flu.   No heart abnormalities were reported but he was assessed to be in acute respiratory distress (Tr. 674).

**B.      Testimony of the Vocational Expert "VE"**

A vocational expert appeared and testified.   She described Plaintiff's past relevant work as a fork lift operator as being medium and semi-skilled, the baker as being medium and semi-skilled, and a shuttle driver as light and unskilled.   She was asked to assume an individual who had the residual functional capacity for light and sedentary work activities who had an emotional disorder with restrictions consistent with Ms. Garland's report (Tr. 41).    Based upon that, she opined that such an individual could be a hand packager, a sorter, an assembler, an inspector, or a cleaner (Tr. 41-42).    If an individual had to avoid being around dust or other respiratory irritants or temperature extremes, that would reduce the jobs by about 25%.   Such an individual must tolerate an eight hour work day to do those jobs (Tr. 42).   If the Plaintiff's testimony was correct, there would be no jobs and the use of oxygen would severely reduce jobs (Tr. 43).

**C.      Testimony of Plaintiff**

The Plaintiff appeared at his hearing and testified regarding his condition.   He testified that he had problems with his lungs and had double pneumonia that year and was on oxygen (Tr. 28).   He testified to fatigue, chest pain, as well as shortness of breath and chronic coughing (Tr. 29).   He also suffered from depression (Tr. 29-30).    He had difficulty being in crowds (Tr. 30). He claimed to be deaf in his left ear with some hearing problems in his right ear (Tr. 32).    He reported tremors and taking insulin (Tr. 33).   He reported difficulty in holding things (Tr. 34). He reported back pain which made it difficult to stand for long periods of time (Tr. 35) and had trouble going up and down stairs, walking or sitting (Tr36,37).

**The ALJ's Decision**

10

After considering the effects of all of Plaintiff's impairments, the ALJ determined Plaintiff had the RFC to perform the full range of light work (Tr. 14, Finding No. 4). Based on that RFC, the ALJ determined at step four that Plaintiff could not perform his past relevant work (Tr. 15, Finding No. 5). However, at step five, after considering the Plaintiff's age, education, work experience and RFC, the ALJ applied Medical-Vocational Guideline (Grids) Rule 202.22 to find there was other work Plaintiff could do (Tr. 15, Finding No. 9). Accordingly, the ALJ found Plaintiff had not been under a disability, as defined in the Social Security Act, from October 11, 2006, the alleged disability onset date, through April 26, 2010, the date of his decision (Tr. 16, Finding No. 10; Tr. 110, 117).

## Analysis

Plaintiff contends the ALJ's RFC finding that he could do light work was not supported by substantial evidence (Doc 10, Plaintiff's Brief at 8-9). Plaintiff argues the ALJ did not properly consider the medical opinion of consulting examiner Dr. Krish Purswani, who, Plaintiff argues, assessed greater limitations than that determined by the ALJ in his RFC finding. Further, Plaintiff argues the ALJ did not properly consider the impact of Plaintiff's depression in assessing his RFC (Doc. 10, Plaintiff's Brief at 8-9). Social Security Ruling (SSR) 96-8p defines RFC in part as follows:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do workrelated physical and mental activities. . . . RFC is assessed by [the ALJ] based on all of the relevant evidence in the case record, including information about the individual's symptoms and any "medical source statements" -- i.e., opinions about what the individual can still do despite his or her impairment(s)--submitted by an individual's treating source or other acceptable medical sources.

SSR 96 8p, 1996 WL 374184, at *2.

As the ALJ noted, Dr. Purswani evaluated Plaintiff in March 2009 (Tr. 11-12, 520-24). On examination, Plaintiff's speech, hearing, gait and station were normal (Tr. 522). Plaintiff used no assistive devices and was able to get on and off the examination table without help (Tr. 11, 522). Plaintiff's shoulders, elbows, wrists and hands as well as his hips, knees and ankles were non-tender and had normal range of motion (Tr. 11, 522). Plaintiff's back was non-tender and had normal range of motion (Tr. 11, 523). Neurologically, Plaintiff had full strength in both his upper and lower extremities, he had no tremors, his toe and heel strength were normal and he was able to stand on each foot, but was unable to tandem walk (Tr. 11, 523).

Dr. Purswani ordered and obtained chest x-rays of Plaintiff's chest and images of Plaintiff's spine (Tr. 525-26). As the ALJ noted, the chest x-rays revealed Plaintiff had a normal chest without pulmonary infiltrate or effusion (Tr. 11, 525). The ALJ also noted Plaintiff's lumbar imaging revealed Plaintiff had marginal osteophytes in his upper lumbar spine with no significant disc space narrowing or fracture (Tr. 11-12, 526). Dr. Purswani opined Plaintiff could frequently lift 10 pounds; stand and walk with breaks for a total of 7 hours in an 8-hour workday; and sit for a total of 8 hours in an 8-hour workday (Tr. 12, 524).

Plaintiff argues Dr. Purswani's functional capacity assessment is inconsistent with the ability to perform light work (Doc 10, Plaintiff's Brief at 8). On the other hand, the Commissioner argues Dr. Purswani's assessment is generally consistent with the requirements of light work. The regulations define light work as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it

12

involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

I agree with the Commissioner that Dr. Purswani's assessment Plaintiff could frequently lift up to 10 pounds, stand and walk with breaks up to 7 hours in an 8-hour day and sit for a total of 8 hours in an 8-hour workday (Tr. 524) is generally consistent with the requirements of light work, which, in part, requires frequent lifting or carrying of objects weighing up to 10 pounds and the ability to stand, walk or sit for extended periods. See 20 C.F.R. §§ 404.1567(b), 416.967(b). Dr. Purswani did not indicate the frequency or duration of Plaintiff's breaks. Dr. Purswani's assessment provided substantial evidence to support the ALJ's RFC finding that Plaintiff could perform light work (Tr. 14, Finding No. 4).

Other evidence in the record also supports the ALJ's RFC finding. Two non-examining State agency consultative physicians opined in 2009 that Plaintiff could occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds as well as stand, walk or sit each for a total of about 6 hours in an 8-hour work day (Tr. 595-603, 605). State agency medical consultants are highly qualified physicians who are experts in Social Security disability evaluation. See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). The ALJ noted the findings of the State agency consultative physicians were consistent with his findings, including his decision that Plaintiff was not disabled (Tr. 15, 17). *See Atterbery v. Sec'y of Health and Human Servs*., 871 F.2d 567, 570 (6th Cir. 1989) (noting opinions of non examining State agency consultants that

13

are consistent with the evidence of record represent substantial evidence to support the ALJ's findings).

Plaintiff argues the Commissioner cannot disregard the opinions of a consulting physician which are favorable to a claimant and that full credit should have been given to his opinion (Doc 12, Plaintiff's Brief, P. 8). However in this case, Dr. Purswani was not a treating physician whose opinion was eligible for controlling weight. See 20 C.F.R. §§404.1527(d)(2), 416.627(d)(2) (noting only a treating physician's opinion may warrant controlling weight). Also, Dr. Purswani's opinion is not in direct conflict with the State agency medical opinions. I conclude there is substantial evidence to support the RFC finding. The ALJ considered the opinions of the State Agency Physicians and Dr. Purswani's opinion, and on that basis came to his RFC finding that Plaintiff could perform light work (Tr. 11-12, 14).

Next, Plaintiff argues the ALJ's RFC finding conflicts with the ALJ's step two finding regarding Plaintiff's mental impairment (Doc. 12, Plaintiff's Brief at 8). The ALJ found Plaintiff's depression was a severe impairment (Tr. 10, Finding No. 3). However, the ALJ's RFC did not include any mental limitation (Tr. 14, Finding No. 4). Plaintiff argues it is unclear what mental limitations the ALJ found (Doc 12, Plaintiff's Brief at 9). The Commissioner argues substantial evidence supported the ALJ's RFC finding, despite his exclusion of any limitations concerning Plaintiff's depression, because the objective medical evidence and medical source opinions in the record did not support any mental limitations. *See e.g., Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (The RFC circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."); *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (unpublished disposition) ("The regulations

14

recognize that individuals who have the same severe impairment may have different residual functional capacities depending on their other impairments, pain, and other symptoms.").

At step two, the ALJ assessed Plaintiff's limitations and restrictions from his mental impairment(s) using the categories in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings (Tr. 13). See Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *4. The ALJ noted Plaintiff's mental impairment caused a mild restriction with his activities of daily living and a moderate limitation with social functioning and concentration, persistence or pace (Tr. 13). The ALJ's findings mirrored the findings in an April 8, 2009, Psychiatric Review Technique form prepared by a State agency psychological consultant (Tr. 606-19). As discussed by the ALJ, the mental RFC assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment than the assessment at step two (Tr. 14). Steps 4 and 5 require itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of impairments (Tr. 14). *See id.*

In assessing Plaintiff's symptoms at step four, the ALJ followed a two step process in which he first determined whether there were underlying medically determinable physical or mental impairments i.e., impairments that could be shown by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce plaintiff's symptoms (Tr. 14). The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms (Tr. 15). Once it was shown that underlying physical or mental impairments could reasonably be expected to produce Plaintiff's pain or other symptoms, the ALJ evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limited Plaintiff's ability to do basic work activities (Tr. 14). See *Duncan*, 801 F.2d at 853. In doing so, the ALJ found Plaintiff's

statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with his RFC finding (Tr. 15). See SSR 96-7p, 1996 WL 374186, at *2 (noting that in making a credibility determination, the ALJ must consider the record as a whole, including objective medical evidence; the claimant's statements about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence); see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (noting the factors to be considered in evaluating a claimant's credibility).

Plaintiff testified he was not seeing a mental health professional for his depression and lacked the funds to do so (Tr. 29-30). However, as the Commissioner argues, Plaintiff does not provide evidence that he had been referred to a mental health therapist or that he had attempted to access public mental health services. The record contains a mental health social history completed on October 4, 2006, at the Arkansas Department of Corrections, where Plaintiff was incarcerated for failure to pay child support (Tr. 386-98). The examiner opined Plaintiff had a slight mental health problem (Tr. 397). During a subsequent mental health screening on October 17, 2006, Plaintiff stated he suffered depression and took Paxil (an antidepressant), but his mental health examiner noted Plaintiff's behavior and appearance were normal and released him to the general population with a referral to mental health (Tr. 376).

The ALJ noted the February 2008 evaluation of Dr. Albert Kittrell, a psychiatrist with the Arkansas Department of Corrections (Tr. 12, 514-15). On examination, Plaintiff was cooperative and maintained good eye contact; he did not appear nervous or jittery; he was rational; and his affect was appropriate and bright (Tr. 515). Dr. Kittrell stated he was unable to discern clear symptoms of depression or anxiety (Tr. 515). Nevertheless, Dr. Kittrell diagnosed Plaintiff

with "possible depressive disorder NOS" (not otherwise specified), and prescribed Celexa (an antidepressant) "as by [Plaintiff's] report this was helpful to him" (Tr. 515).

Plaintiff also underwent a consultative psychological evaluation in March 2009 conducted by Alice Garland, as the ALJ noted (Tr. 12, 516-19). Plaintiff reported a history of intermittent depression for 15 years and that for the past three years his family physician had prescribed him an antidepressant (Tr. 517). He described his daily activities as arising at 5:30 a.m. to prepare breakfast for his wife and get his daughter off to school; going back to bed until noon; getting up to clean the house, washing dishes and doing laundry; and then preparing supper for his wife (Tr. 518). Plaintiff also stated he and his wife started a church in their home and members meet there twice a week for worship (Tr. 518).

On examination, Ms. Garland noted Plaintiff's dress, grooming and hygiene were adequate and he was pleasant and cooperative (Tr. 516). Plaintiff's motor activity was average and he had good eye contact (Tr. 12, 516). His thought process was organized and there was no indication of a thought disorder (Tr. 12, 516). Plaintiff's insight and judgment were fair to poor and his affect and mood were congruent and appropriate (Tr. 516). Ms. Garland estimated Plaintiff's current ability to relate to others was adequate to fair (Tr. 12, 518). Ms. Garland's diagnostic impression was "Depressive Disorder, NOS" (Tr. 12, 519). In assessing Plaintiff's functional capacities, Ms. Garland opined Plaintiff had no more than a mild limitation in his ability to do complex and detailed work; his ability to persist and concentrate was moderately limited; his ability to work with the public was moderately limited; he may not take authority well; he may feel more comfortable working by himself or in small groups; and his adaptation was moderately limited (Tr. 12, 519).

In April 2009, a State agency psychological consultant opined Plaintiff could carry out simple and complex instructions and would have some but not substantial difficulty maintaining attention and concentration for extended periods, working in coordination with or proximity to others without being distracted by them and completing a normal workday/workweek at a consistent pace without interruptions from psychologically based symptoms (Tr. 529). The consultant further opined Plaintiff would have some but not substantial difficulty interacting with the public, coworkers and supervisors and could adapt to infrequent change (Tr. 529). In June 2009, another State agency psychological consultant affirmed the April 2009 assessment (Tr. 604).

The ALJ also considered Plaintiff's credibility in assessing the impact of his mental limitations on his RFC. Discussing Plaintiff's RFC, the ALJ noted Plaintiff's reported activities were not limited to the extent one would expect, given Plaintiff's complaints of disabling symptoms and limitations, e.g., Plaintiff's daily activities and leading a congregation are incongruous with his alleged disabling symptoms and limitations (Tr. 14, 518). See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (noting ALJ may consider daily activities in assessing symptoms). Plaintiff's daily activities showed he was able to function quite normally. The ALJ noted Plaintiff had not received the type of treatment one would expect (Tr. 14). See 20 C.F.R. §§ 404.1529(c)(3)(iv), (v), 416.929(c)(3)(iv), (v) (noting ALJ may consider medications and treatment in assessing symptoms). The ALJ also noted Plaintiff's mental health treatment had been routine, conservative and successful in controlling Plaintiff's symptoms (Tr. 14, 224, 425, 428, 491, 514-15). See *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 417 (6th Cir. 2011) (unpublished disposition) (noting ALJ properly considered claimant's routine and conservative treatment in assessing credibility). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. See *Krupa v. Comm'r of Soc. Sec.*, 178 F.3d 1295, at *3

18

(6th Cir. 1999) (unpublished disposition) (where claimant's testimony of disabling mental impairments was unsupported both by the record and by claimant's testimony about her daily activities).

Because a severe impairment does not equate to functional impairments, I conclude the ALJ's decision to find Plaintiff's claimed limitations to be only partially credible is supported by substantial evidence in the record and properly incorporated into the RFC finding that Plaintiff can perform light work (Tr. 14, Finding No. 4).

Next, Plaintiff contends the ALJ improperly relied upon VE testimony to find him not disabled (Doc. 12, Plaintiff's Brief at 7-9). However, in this case the ALJ did not rely on VE testimony to find Plaintiff not disabled. The ALJ noted "a finding of 'not disabled' is reached by direct application of Medical-Vocational Rule 202.22" (Tr. 16).

After determining Plaintiff had the RFC for the full range of light work (Tr. 14, Finding No. 4), the ALJ determined at step four that Plaintiff could not do his past relevant work (Tr. 15, Finding No. 5). See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Step 5 of the sequential evaluation required the ALJ to determine if Plaintiff could perform other work, which is defined as jobs that exist in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(f), (g), 404.1560(c); 416.920(f), (g), 416.960(c). Although the ALJ took testimony from a VE (Tr. 15, 41-44), the ALJ relied upon the Grids to determine the existence of jobs Plaintiff was capable of performing (Tr. 16). See C.F.R. pt. 404, subpt. P, app. 2. When a claimant's vocational characteristics coincide with the criteria of a rule in the Grids, the existence of significant numbers of unskilled jobs in the national economy is established and the claimant is considered not disabled. See 20 C.F.R. §§ 404.1569, 416.969; 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00; SSR 85-15, 1985 WL 56857, at *1; *Heckler v. Campbell*, 461 U.S. 458, 461 62, 470 (1983).

19

In this case, on the date Plaintiff filed his applications and on the date of the ALJ's decision, Plaintiff was between 46 and 48 years old and was "a younger individual age 45-49" (Tr. 15-17, 53, 110-11, 117-24). See 20 C.F.R. §§ 404.1563(c), 416.963(c). The ALJ found Plaintiff had at least a high school education, acquired transferable skills from his past work, which included semi-skilled work (Tr. 41) and could perform the full range of light work (Tr. 14-15, 26). Consulting the Grids Table that corresponded to Plaintiff's RFC for light work, age, education and vocational characteristics, the ALJ determined that a finding of "not disabled" was appropriate under section 202.22 (Tr. 23). See 20 C.F.R. Pt. 404, subpt. P, app. 2, § 202.22.

The Grids take into account only a claimant's exertional impairments: i.e., strength for sitting, standing, walking, lifting, carrying, pushing, and pulling. See 20 C.F.R §§ 404.1569a(b), 416.969a(b). Therefore, reliance upon the Grids is inappropriate where a claimant has a significant non-exertional impairment, i.e., an impairment that "restricts a claimant's performance of a full range of work at the appropriate functional capacity level...." *Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 796 (6th Cir. 1986) (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981)). However, if the nonexertional impairment is not significant, the Grids may be used to make the Step 5 determination. See 20 C.F.R §§ 404.1569a, 416.969a; *Kimbrough*, 801 F.2d at 796 97.

Here, the ALJ's conclusion that Plaintiff could perform the full range of light work had the effect of finding that his depression did not significantly limit his ability to do a full range of light work. Therefore, the ALJ was entitled to rely upon the Grids to satisfy the last step of the sequential analysis. *Id*.

The reports submitted by the consultative psychological examiner Ms. Garland and the State agency psychological consultants (Tr. 516-19, 527-29, 604) support the ALJ's conclusion

20

that Plaintiff could meet the mental demands of unskilled light work. The basic mental demands generally required by unskilled work includes the abilities, on a sustained basis, to understand, remember and carry out simple instructions; make simple work related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting. See SSR 96 9p, 1996 WL 374185, at *9. Neither the consultative examiner nor the State agency consultants opined Plaintiff had severe limitations due to depression (Tr. 516-19, 527-29, 604). Ms. Garland found Plaintiff to have only mild limitation in ability to do complex and detailed work; moderate limitation in ability to persist and concentrate; moderate limitation with ability to work with the public and may not take authority well; and moderate limitation in ability to adapt (Tr. 519). The lack of evidence in the record establishing that Plaintiff's depression restricted his ability to do light unskilled work supports the ALJ's conclusion that Plaintiff could perform work that requires little or no judgment to do simple duties that can be learned on the job in a short period of time. See 20 C.F.R. §§ 404.1598(a), 416.968(a) (defining unskilled work). Therefore, I conclude the ALJ's determination that Plaintiff's depression did not significantly limit his ability to perform the full range of light work is supported by substantial evidence. *See Cooper v. Sec'y of Health & Human Servs.*, 843 F.2d 1390, at *5 (6th Cir. 1988) (unpublished disposition) ("[T]here is substantial evidence to support the ALJ's finding that claimant's mental impairment did not limit her ability to do a full range of sedentary work, and thus the ALJ was justified in relying upon the grids.").

Even if the ALJ's reliance on the Grids to find Plaintiff not disabled was error, the VE testified that a person of Plaintiff's age, education, vocational characteristics and who had an emotional disorder with limitations consistent with those opined by Ms. Garland (Tr. 519) could do other unskilled light work such as hand packager, sorter and assembler (Tr. 41-42). The VE

21

further testified those jobs involved dealing with things rather than people, which addressed a concern raised by Ms. Garland that Plaintiff might do better in small groups or working by himself (Tr. 42-43, 519).   If a VE testifies in response to a hypothetical question that precisely sets forth all the claimant's impairments, her response constitutes substantial evidence for a finding of either disability or nondisability.   See *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1988).

In addition, the VE testified at the light level there were about 7,500 hand packager, assembler and inspector jobs in the region and 8 million nationally and at the sedentary level there were about 2,000 such jobs in the region and 1.5 million nationally (Tr. 41-42).   Those numbers constitute significant numbers of jobs in the economy.   See *McCormick v. Sec'y of Health and Human Servs.*, 861 F.2d 998, 1000, 1002 (6th Cir. 1988) (finding 4,000 to 5,000 jobs in Michigan to be a significant number of jobs); *Hall v. Bowen*, 837 F.2d 272, 274 275 (6th Cir. 1988) (finding 1,350 to 1,800 jobs in nine county area of Dayton, Ohio to be significant).   In light of the VE testimony and the significant number of jobs Plaintiff could perform in the national economy, if there was error by the ALJ in relying on the Grids, it was harmless.

Plaintiff objects to the ALJ's incorporating by reference Ms. Garland's limitations in his hypothetical question to the VE rather than, apparently, repeating them verbally to the VE (Tr. 41, 519) (Doc. 12, Plaintiff's Brief at 8).   Plaintiff argues the hypothetical was unclear and required the VE to interpret medical evidence.   Plaintiff's argument fails because the ALJ did not ask the VE to interpret medical evidence.   However, the VE was specifically directed to consider "restrictions ... consistent with Exhibit 2F, Ms. Garland's report" (Tr. 41, Tr. 516-519).   Ms. Garland's assessment contained specific ratings on four vocational capacities, none of which was predicted to be impaired more than "moderately" (Tr. 519).   Plaintiff's attorney did not dispute

the content of the hypothetical question at the administrative hearing or otherwise inquire whether the VE understood the hypothetical question.   In any event, the ALJ did not err by incorporating by reference Ms. Garland's assessment of Plaintiff's limitations in his hypothetical question to the VE.   See e.g. *Carroll v. Astrue*, No. 2:10-cv-138, 2011 WL 3739141, at *4 (E.D.Tenn. July 28, 2011) (unpublished disposition) (it was not error for the ALJ to ask the VE to consider restrictions set out in a medical report); *Anderson v. Astrue*, No. 2:07-cv-140, 2009 WL 32935, at *4-5 (E.D.Tenn. Jan. 6, 2009) (unpublished disposition) (it was not error where the ALJ in his hypothetical question referred the VE to a medical report).

Plaintiff next contends the ALJ's hypothetical question was incomplete.   In particular, Plaintiff also argues his use of portable oxygen and alleged limitation of inability to lift more than 10 pounds should have been included in the hypothetical question (Doc. 12, Plaintiff's Brief at 7-9). In January 2010, Plaintiff was placed on 2 liters of oxygen every 24 hours due to low oxygen saturation in his blood (Tr. 668, 674).   The VE testified a person required to use oxygen at work would be limited to sedentary work "because of the standing and walking required of light" (Tr. 43).   Plaintiff argues the ALJ did not consider the VE testimony elicited on examination by Plaintiff's attorney concerning the impact of a claimant's use of portable oxygen in the workplace. See Pl.'s Br. at 8.   However, a hypothetical question need only include those limitations that the ALJ accepts as credible.   See *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).   "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."   *Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994).

In discussing Plaintiff's severe impairments, the ALJ concluded Plaintiff did not have a severe respiratory impairment because, among other factors, it was not clear whether Plaintiff's use of oxygen was a temporary treatment or if he required 24 hour use of oxygen (Tr. 12).   See 20

23

C.F.R §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (noting a severe impairment must meet the 12 month duration requirement in 20 C.F.R §§ 404.1509, 416.909); see also 20 C.F.R. §§ 404.1520(c), 416.920(c) (noting the burden is upon Plaintiff to prove the existence of a severe impairment and that such a condition was present, continuously, for a period of twelve months).

Plaintiff also argues the VE's testimony did not comply with the requirements of SSR 00-4p, 2000 WL 1898704, and that the ALJ did not ask the VE if her testimony was consistent with the requirements of the Dictionary of Occupational Titles (DOT) as required by SSR 00-4p, 2000 WL 1898704, at *4. See Pl.'s Br. at 7. Plaintiff does not explain how the testimony of the VE did not comply with the requirements of SSR-004p. The Ruling provides that "[w]hen a VE or VS [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." *Id.* at *4. If there appears to be a conflict, the adjudicator should "obtain a reasonable explanation," resolve the conflict before relying on the VE or VS evidence, and explain how the conflict was resolved in the decision. *Id.*

The ALJ did not ask the VE about any possible conflict between the VE evidence about the requirements of the jobs she identified and information provided in the DOT. However, the Commissioner argues, to the extent the ALJ erred, it was harmless. First, the ALJ relied on the Grids to find Plaintiff not disabled. Second, Plaintiff has shown no discrepancies between the DOT and the jobs the VE found that the Plaintiff could perform within the restrictions set out in the hypothetical question. See *Shinseki v. Sanders*, 566 U.S. 396, ___, 129 S.Ct. 1696, 1706 (2009) (noting the burden of showing that an error is harmful falls on the party attacking the agency's determination); *Frederick v. Comm'r of Soc. Sec.*, No. 10-cv-11349, 2011 WL 1518966, at *7-8 (E.D. Mich. Mar. 25, 2011) (unpublished disposition) (where plaintiff did not set forth any

24

inconsistencies between VE testimony and DOT, the failure of ALJ to make the required inquiry under SSR 00-4p was harmless); *Fleeks v. Comm'r of Soc. Sec.*, No. 08-cv-13135, 2009 WL 2143768, at \*7 (E.D. Mich. July 13, 2009) (harmless error where plaintiff's request for remand under SSR 00-4p was unaccompanied by any allegation that the VE's testimony actually conflicted with the DOT). Since Plaintiff has failed to show he was harmed by the ALJ's inadvertence in not asking the VE whether there were any inconsistencies between her testimony and the DOT, I conclude the ALJ's failure to inquire of the VE pursuant to SSR 00-4p is harmless and do not recommend remand on the basis of this purely technical error.

## Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and therefore RECOMMEND[2] the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 13) be GRANTED, and plaintiff's Motion for Judgment on the Pleadings (Doc. 11) be DENIED.


S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[2]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.   Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.   Failure to file objections within the time specified waives the right to appeal the District Court's order.   _Thomas v. Arn_, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide _de novo_ review where objections to this report and recommendation are frivolous, conclusive or general.   _Mira v. Marshall_, 806 F.2d 636 (6th Cir. 1986).   Only specific objections are reserved for appellate review.   _Smith v. Detroit Federation of Teachers_, 829 F.2d 1370 (6th Cir. 1987).